IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Crim. Action No. 02-62 (MN) |
| BRUCE STEWART, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM ORDER

At Wilmington, this 7th day of September 2022;

Pending before the Court is the motion of Defendant, Bruce Stewart, for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (D.I. 261). Section 3582(c)(1)(A)(i) empowers the Court to modify a term of imprisonment when "extraordinary and compelling reasons warrant such a reduction" after considering sentencing factors under § 3553. Mr. Stewart contends that his sentence should be reduced because of (1) his post-sentencing rehabilitation; (2) being victimized by an attempted prison rape; and (3) the threat to his health posed by COVID-19. The government opposes Mr. Stewart's motion. (*See* D.I. 278, 279).

**I.      BACKGROUND**

Mr. Stewart is 48 years old. In September of 2003, a jury convicted him of multiple counts of drug trafficking, interstate travel in aid of racketeering, and attempted money laundering. The Guidelines range for Mr. Stewart were 30 years to life in prison. In April of 2005, Mr. Stewart was sentenced to life in prison. He has been detained in federal custody since May 31, 2002, and thus has served just over 20 years of his sentence.

On April 24, 2021, Mr. Stewart submitted a request for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) to the Warden of his current institution, FCC Pollock. That request

was denied on May 11, 2021. Mr. Stewart then filed a motion in this Court *pro se* seeking compassionate release. (D.I. 261). Thereafter, the Court appointed the Federal Public Defender (D.I. 264) to represent Mr. Stewart and, on January 28, 2022, counsel filed a new brief in support of Mr. Stewart's motion for compassionate release (D.I. 275). The motion has been fully briefed. (D.I. 275, 278, 279, 281, 282).

## II.   LEGAL STANDARD

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 825 (2010). One of those circumstances is compassionate release, which requires administrative exhaustion followed by a showing that "extraordinary and compelling reasons warrant such a reduction" and a finding that the statutory sentencing factors at 18 U.S.C. § 3553(a) ("§ 3553(a) factors") support release. *See* 18 U.S.C. § 3582(c)(1)(A), (c)(1)(A)(i); *United States v. Pawlowski*, 967 F.3d 327, 330 (3d Cir. 2020). "Compassionate release is discretionary, not mandatory; therefore, even if a defendant is eligible for it, a district court may deny compassionate release upon determining that a sentence reduction would be inconsistent with the § 3553(a) factors." *United States v. Fountain*, 2021 WL 4772957, at *1 (3d Cir. 2021) (internal citations omitted) (unpublished). As the movant, a defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a policy statement addressing compassionate release. U.S.S.G. § 1B1.13 ("the Policy Statement"). The Policy Statement largely restricts "extraordinary and compelling reasons" to: (1) terminal illness or a serious medical condition; (2) complications in old age; and (3) unique family circumstances. *Id.* at n.1. In *United States v. Andrews*, the Third Circuit held that the Policy Statement is not binding on prisoner-initiated

motions for relief, but "sheds light on the meaning of extraordinary and compelling reasons." 12 F.4th 255, 260 (3d Cir. 2021) ("*Andrews*").  Indeed, in concluding that the Policy Statement is not *per se* binding, the Third Circuit noted that: "Because Congress reenacted the compassionate-release statute without any alterations to the phrase "extraordinary and compelling reasons," it was reasonable . . . to conclude that the phrase largely retained the meaning it had under the previous version of the statute."  *Id.* at 260.

### III.   DISCUSSION

As already noted, Mr. Stewart advances three reasons that he argues constitute "extraordinary and compelling" factors that demand his early release from prison: (1) his post-sentencing rehabilitation; (2) being victimized by an attempted prison rape; and (3) the threat to his health posed by COVID-19.  (D.I. 275 at 7).  The Court addresses each issue in turn.

#### A.   Rehabilitation

According to his presentence report, prior to his incarceration, Mr. Stewart was a drug trafficking brute, who used fear and intimidation to get what he wanted.  He evidenced little compassion for the needs of others.  In fact, at that time, if you disappointed Mr. Stewart there was a good possibility you would end up dead.  The Court does not point this out to retread old ground, but to show that some of the changes described in Mr. Stewart's motion are quite noteworthy.  Indeed, it appears that Mr. Stewart has endeavored to improve himself during his incarceration.  He has participated (and done well) in three rigorous programs while in prison: (1) the Challenge

Program;[1] (2) the Inmate Suicide Watch Companion Program;[2] and (3) the Mental Health Companion Program. His actions during those programs earned him positive reviews and high grades.

Moreover, during his incarceration, Mr. Stewart appears to have learned to look beyond himself and to pay attention to the needs of others. The Court has read Mr. Stewart's letter in which he looks back on himself as "young, selfish, ignorant and suffer[ing] from an anti-social disorder" and reflects on the hard work and discipline he had to put in to change his outlook. The Court has also read the many pages of character letters describing Mr. Stewart as a man of faith and his impact on those with whom he has served time. Many of the letters reflect admiration and gratitude to Mr. Stewart for help during their time in prison that has endured through their post-prison lives. That Mr. Stewart has made such strides is no small thing and certainly worthy of respect.

Rehabilitation, even extraordinary rehabilitation, however, bears an extremely high burden to merit release. Indeed, according to Congress, rehabilitation by itself does not qualify as an "extraordinary and compelling" reason. 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."). Even if that were not so, however, it seems that Mr. Stewart still has some work to do. As the Government points out,

---

[1] The Challenge Program is a one- to three-year "cognitive-behavioral, residential treatment program" that "focuses on the reduction of antisocial peer associations; promotion of positive relationships; increased self-control and problem-solving skills; and development of pro-social behaviors." "The program places a special emphasis on violence prevention." *See* Directory of National Programs, Federal Bureau of Prisons.

[2] In the Inmate Suicide Watch Program, the Psychology Department trains approved and responsible inmates on mental illness and suicide prevention to enable them to monitor at-risk inmates. (*See* D.I. 275, Ex. F, Inmate Suicide Watch Companion Program Certificate and Documentation).

Mr. Stewart has accumulated ten infractions while in BOP custody, including five relating to the possession of weapons. (*See* D.I. 278, Ex. A). Although seven of those ten are old, two occurred in the last few years and involved fighting and possessing a dangerous weapon. (*Id.*). The Court does not mean to detract from the accomplishments Mr. Stewart has achieved, but these incidents do, however, suggest that his rehabilitation is ongoing and that it cannot yet be said to be "exceptional to a marked extent," such that it is extraordinary, nor "compelling" such that it convinces the Court that his rehabilitation is sufficient to merit release from prison at this time.

### B. Attempted Prison Rape

Mr. Stewart was the victim of an attempted prison rape. Although this charge is serious and concerning, the Court is not convinced that it falls within the ambit of "extraordinary and compelling" circumstances that allow for release from an otherwise lawful incarceration. *See United States v. Tate,* 2022 WL 827256, at *2 (W.D.N.C. Mar. 18, 2022) ("An inmate's reasonable fear of assault by other inmates within the BOP is not an extraordinary or compelling reason for compassionate release under 18 U.S.C. § 3582(c)(1)(A)."). Moreover, it appears that Mr. Stewart raised this charge in connection with the instant motion. As the government points out, "there is a large and sophisticated regulatory regime already in place to handle allegations of prisoner rape, none of which has occurred in this case." (D.I. 278 at 6-7). No investigation has been done, no remedies have been sought under the applicable policies, and no litigation has been filed to substantiate the claims. Thus, at this point, the Court cannot base a finding of extraordinary and compelling reasons on the rape allegations.

### C. COVID-19

Mr. Stewart's concerns regarding future susceptibility to COVID-19 variants are not "extraordinary and compelling reasons" meriting release. Mr. Stewart has recovered from COVID-19 and has been fully vaccinated. As the Third Circuit has held: "the mere existence of

COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Instead, an inmate "must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a uniquely high risk of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held." *See United States v. Tartaglione*, 2020 WL 3969778, at *5-6 (E.D. Pa. July 14, 2020) (quotation omitted).

Here, the record shows that Mr. Stewart receives regular medical care and his increased risk of getting very sick from COVID-19 appears at most to be minimally increased over that of others. Thus, he does not have such health issues as to demonstrate "extraordinary and compelling circumstances," even when combined with the on-going COVID-19 pandemic. Thus, he does not qualify for compassionate release on this ground.

### IV.  CONCLUSION

THEREFORE, for the foregoing reasons, IT IS HEREBY ORDERED that Mr. Stewart's motion for compassionate release (D.I. 261) is DENIED.

*[signature]*
The Honorable Maryellen Noreika
United States District Judge

6